UNITED STATES of America, Plaintiff–Appellant and Cross–Appellee,

v.

Robert J. SHEWMAKER, Sr., Defendant–Appellee and Cross–Appellant.

Nos. 90–3207, 90–3215.

United States Court of Appeals, Tenth Circuit.

June 24, 1991.

Kenneth W. Starr, Sol. Gen., Dept. of Justice, Washington, D.C., Lee Thompson, U.S. Atty., Richard L. Hathaway, Asst. U.S. Atty., Topeka, Kan., for plaintiff-appellant and cross-appellee.

Michael M. Jackson, Topeka, Kan., for defendant-appellee and cross-appellant.

Before TACHA, BALDOCK and EBEL, Circuit Judges.

BALDOCK, Circuit Judge.

In September 1989, the Kansas Bureau of Investigation (KBI) discovered a marijuana field in Allen County, Kansas. Upon further investigation, the government discovered that defendant Robert J. Shewmaker, Sr. was the supervisor of a marijuana farming and processing enterprise with fields in six Kansas counties. Defendant pled guilty to one count of conspiracy to plant, cultivate, grow, harvest and possess marijuana with the intent to distribute, 21 U.S.C. §§ 846, 802 & 812. The Sentencing Guidelines applied because the offense occurred after November 1, 1987. *See* 28 U.S.C. § 994(a); United States Sentencing Commission, *Guidelines Manual* (Nov. 1990) [hereinafter U.S.S.G.]. The government appeals defendant's sentence, contending that the court did not comply with Sentencing Guideline § 5G1.3. And defendant cross-appeals, raising several Guideline issues. The government's argument is well-taken, and we remand. On remand, the district court is instructed simultaneously to vacate the sentence and resentence in accordance with this opinion.

## I. Standard of Review

In reviewing a district court's application of the Sentencing Guidelines to the facts, we apply a due deference standard, yet we review *de novo* questions of law. *See* 18 U.S.C. § 3742(e). *See also United States v. Banashefski*, 928 F.2d 349, 351 (10th Cir.1991) (citing *United States v. Smith*, 900 F.2d 1442, 1445 (10th Cir.1990) and *United States v. Kirk*, 894 F.2d 1162, 1163 (10th Cir.1990)). "We be-

gin, as with statutory interpretation, with the language of the Guidelines, and move to the Commentary, and Supplementary Illustrations in instances of ambiguity." *Banashefski*, 928 F.2d at 351 (citing *Smith*, 900 F.2d at 1446–47). Regarding factual determinations made by the district court, we apply a "clearly erroneous" standard of review. *See United States v. Rutter*, 897 F.2d 1558, 1560 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990); *United States v. Beaulieu*, 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

## II. The Government's Appeal, No. 90–3207

On May 5, 1986, in the federal district court in Savannah, Georgia, defendant was convicted on drug charges resulting from his importation of approximately 17,000 pounds of marijuana into the United States. Defendant was sentenced on separate counts to concurrent sentences totaling twenty-five years imprisonment, but was released on bond pending appeal. Defendant absconded and remained a fugitive until April 1989, when he was arrested in Ontario, Canada. In October 1989, he was sentenced to an additional consecutive five-year term for failure to return, 18 U.S.C. § 3146.

In this case, the district court applied the Guidelines and sentenced defendant to thirty years imprisonment to run concurrently with the previous sentences imposed by the federal district court in Georgia. The government appeals, contending that Guideline § 5G1.3 requires defendant's new sentence to run consecutively with the prior sentences because the instant offense occurred while he was serving the prior sentences. Our jurisdiction to entertain this issue arises under 18 U.S.C. § 3742(b). Section 3742(b) allows the government to appeal a final sentence that was "imposed in violation of law [or] as a result of an incorrect application of the sentencing

guidelines...." We review *de novo* the district court's determination to sentence concurrently because it presents a pure question of law. *See United States v. Kuntz,* 908 F.2d 655, 656–57 (10th Cir.1990) (citing *United States v. La Guardia,* 902 F.2d 1010, 1012 (1st Cir.1990)).

Section 5G1.3 provides: "If the instant offense was committed while the defendant was serving a term of imprisonment (including ... escape status), the sentence for the instant offense shall be imposed to run consecutively to the unexpired term of imprisonment." Because defendant was on escape status from the prior sentence when he committed the instant offense, the Guidelines would appear to require that his sentences run consecutively. The district court, however, sentenced defendant to a concurrent sentence, relying on *United States v. Wills,* 881 F.2d 823 (9th Cir.1989). The *Wills* court held that 18 U.S.C. § 3584(a), irrespective of Guideline § 5G1.3, allows the sentencing court "discretion to impose a concurrent or consecutive sentence, as a matter of law...." *Id.* at 826. *See also United States v. Nottingham,* 898 F.2d 390 (3d Cir.1990). Section 3584(a) provides: "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively...." Although § 3584(a) read alone appears to grant unfettered discretion to a sentencing court, subsection (b) of the statute requires the district court to consider the factors set forth in 18 U.S.C. § 3553(a) before determining whether to sentence consecutively or concurrently with the prior sentence. Section 3553(a)(5), in turn, requires the district court to consider the Guidelines promulgated by the Sentencing Commission pursuant to 28 U.S.C. § 994(a)(1). And § 994(a)(1)(D) delegates to the Sentencing Commission authority to promulgate guidelines governing a district court's "determination of whether multiple sentences to terms of imprisonment should be ordered to run concurrently or consecutively." But § 994 also requires that the Guidelines be consistent with title 18, including 18 U.S.C. § 3584(a). *See* 28 U.S.C. § 994(b)(1). The *Wills* court focused on this latter portion of

§ 994, holding that Guideline § 5G1.3 is *ultra vires* because it is inconsistent with 18 U.S.C. § 3584(a). *Wills,* 881 F.2d at 826.

The apparent tension, in sum, is between two provisions of 28 U.S.C. § 994—subsection (a)(1)(D), delegating to the Sentencing Commission authority to promulgate Guidelines regarding concurrent and consecutive sentences, and subsection (b)(1), requiring consistency with 18 U.S.C. § 3584(a). The Eleventh Circuit, in *United States v. Fosset,* 881 F.2d 976 (11th Cir.1989), implicitly rejected the *Wills* rationale and reconciled § 3584(a) and Guideline § 5G1.3. Most circuit courts that have addressed this issue have followed *Fosset. See United States v. Stewart,* 917 F.2d 970 (6th Cir.1990); *United States v. Miller,* 903 F.2d 341 (5th Cir.1990); *United States v. Rogers,* 897 F.2d 134 (4th Cir.1990). These courts have held that Guideline § 5G1.3 is reconcilable with 18 U.S.C. § 3584(a) because § 5G1.3 does not preclude a court from departing from the Guidelines and sentencing concurrently. The Guidelines provide generally for two methods of downward departure. First, "the particular guideline at issue may suggest circumstances or factors that, if present, may provide the basis for departure." *Rogers,* 897 F.2d at 137. Second, the court retains discretion to depart, subject to review, if it determines that factors relevant to the sentencing have not been addressed adequately by the Guidelines. *See id.;* 18 U.S.C. §§ 3553(b) and 3742(e)(3); U.S.S.G., Ch. 1, Pt. A, intro. at 4(b), and § 5K2.0. *See also United States v. Maldonado–Campos,* 920 F.2d 714, 719–20 (10th Cir.1990).

All of the statutes involved in this analysis, 18 U.S.C. § 3553, 18 U.S.C. § 3584, and 28 U.S.C. § 994 were enacted as part of the Sentencing Reform Act of 1984. In resolving the apparent tension among the statutes, we are guided by well-established canons of statutory construction. " 'In expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy.' " *Mastro Plastics Corp. v. Labor Board,* 350

U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309 (1956) (quoting *United States v. Heirs of Boisdore,* 49 U.S. (8 How.) 113, 122, 12 L.Ed. 1009 (1850). *See also Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989). And " 'a statute should be interpreted so as not to render one part inoperative.' " *Mountain States Tel. & Tel. Co. v. Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (quoting *Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979)). The *Wills* approach renders the delegation to the Sentencing Commission, 28 U.S.C. § 994(a)(1)(D), inoperative when 18 U.S.C. § 3584(a) is involved. Moreover, § 3584(a) is a general provision concerning concurrent or consecutive sentences, and § 3584(b) and what it incorporates (28 U.S.C. § 994(a)(1)(D) and Guideline § 5G1.3) are specific provisions. When general and specific statutory provisions apparently contradict, it is well-established that the two may exist together, the specific provision qualifying or limiting the general. *See Townsend v. Little,* 109 U.S. 504, 512, 3 S.Ct. 357, 362–63, 27 L.Ed. 1012 (1883). In this instance, Guideline § 5G1.3, enacted pursuant to 28 U.S.C. § 994, merely qualifies § 3584(a) by requiring the court to consider Guideline departure before sentencing concurrently. Finally, it is preferable to harmonize apparently conflicting statutes, so as to give effect to both. *See United States v. Moore,* 95 U.S. 760, 763, 24 L.Ed. 588 (1877).

■ We think the better reasoned approach is to harmonize the provisions of the Act. Therefore, we adopt the *Fosset* approach. In sum, the rationale we have adopted harmonizes § 3584(a) and Guideline § 5G1.3 by providing that, when an offense is committed during the term of a previously imposed sentence, the new sentence must run consecutively to the old unless the court determines that Guideline departure is appropriate. *See Fosset,* 881 F.2d at 980.

■ Defendant committed the instant offense while he was on escape status from the earlier twenty-five year concurrent sentences imposed by federal district court in Georgia. Therefore, we hold that the district court erred in sentencing defendant concurrently with the earlier sentences without considering whether Guideline departure was appropriate. Regarding the five-year sentence for failure to return to Georgia, the district court in this case properly exercised its discretion under the Guidelines to sentence concurrently because the instant offense occurred before the failure to return sentence was imposed.[1] *See* U.S.S.G. § 5G1.3 Comment. ("Where the defendant is serving an unexpired term of imprisonment, but did not commit the instant offense while serving that term of imprisonment, the sentence for the instant offense may be imposed to run consecutively or concurrently. . . .").

### III. Defendant's Cross–Appeal, No. 90–3215

■ Defendant first argues that the court erred in calculating his criminal history category. *See* U.S.S.G. § 4A1.1 et seq. The Guidelines require an addition of three criminal history points for each prior offense which resulted in a sentence exceeding thirteen months. *Id.* § 4A1.1(a). In applying § 4A1.1(a) to defendant's sentence, the district court added three criminal history points for the prior conviction for conspiracy to possess with intent to distribute marijuana, and the court added three additional points for the failure to return conviction. As a result, defendant's criminal history category was increased from category III to category IV. *See id.* Ch. 5 Pt. A (criminal history category table). Defendant contends that the court should have added a total of only three points for the two prior convictions because the underlying offenses were "related." *See id.* § 4A1.2(a)(2) ("Prior sentences imposed in related cases are to be treated

---

1. The indictment for the instant offense alleged a conspiracy beginning in January 1987, and ending in July 1989; whereas the sentence for failure to return was imposed on October 2, 1990.

as one sentence for purposes of the criminal history.").

The Guidelines commentary suggests that prior "[c]ases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment. (n.3). Defendant argues that the failure to return offense and the underlying drug offenses were "part of a single common scheme or plan" and should therefore be treated as one offense for purposes of the criminal history calculation in the instant offense. Defendant has not pointed to anything in the record which would indicate that the two offenses were part of a "common scheme or plan." His only argument is that the two offenses were related as a matter of law because the failure to appear statute, 18 U.S.C. § 3146, cross-references the underlying crime. Defendant offers no support from case-law for this proposition.

■ In applying the "common scheme or plan" language, courts have looked to factual commonality. Factors such as temporal and geographical proximity as well as common victims and a common criminal investigation are dispositive. *See e.g., United States v. Davis,* 922 F.2d 1385, 1389–90 (9th Cir.1991); *United States v. Veteto,* 920 F.2d 823, 825–26 (11th Cir. 1991); *United States v. Kinney,* 915 F.2d 1471, 1472 (10th Cir.1990). *See also* Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 513–517 (1990) (discussion of the meaning of "common scheme or plan" in the context of "relevant conduct," U.S.S.G. § 1B1.3(a)(2)). We review the district court's fact-intensive inquiry according to a clearly erroneous standard of review. *Kinney,* 915 F.2d at 1472. In this case, we find none of the above factors which would suggest a common scheme or plan. Instead, we find, as did the district court, that defendant committed two distinct offenses: (1) he smuggled large quantities of drugs into the United States in 1980 and 1981; and (2) six

years later, he failed to appear before the authorities to serve the sentence imposed. His failure to appear was not part of a "common scheme or plan" with the underlying offense simply because of the statutory cross-reference, and the district court did not err in its determination.

Defendant next argues that the court erred in quantifying the amount of marijuana involved. Following an evidentiary hearing, the court determined that the marijuana operation involved 74,110 plants. This quantity placed defendant's base offense level at 34. *See* U.S.S.G. § 2D1.1.[2] In determining the quantity, the court relied on the presentence report and on testimony from Rick Atteberry, a KBI agent who participated in the investigation. Defendant contends that Atteberry's hearsay testimony lacked minimum indicia of reliability and was not sufficient to prove the quantity of marijuana involved.

■ Clearly the Federal Rules of Evidence do not control the sentencing process. Instead, the Guidelines allow a judge to consider "any reliable source of information" which falls within constitutional standards. *Beaulieu,* 893 F.2d at 1180. Regarding hearsay, "due process requires that the information used have 'some minimal indicium of reliability beyond mere allegation.'" *Id.* at 1181 (citing *United States v. Sunrhodes,* 831 F.2d 1537, 1543 (10th Cir.1987) and U.S.S.G. § 6A1.3, comment.). After a careful review of the transcript from the sentencing hearing, we are convinced that it was proper for the district court to consider Atteberry's testimony. Under direct and cross-examination, Atteberry provided a detailed account of the methods used by the KBI agents who estimated the quantity of marijuana involved. His detailed account of the estimation process was not "mere allegation." Therefore, we find no constitutional violation.

For Guidelines sentencing, the court must find the quantity of narcotics by a preponderance of the evidence. *See Rutter,* 897 F.2d at 1560. And we review the court's factual finding under the "clearly

---

**2.** Guideline § 2D1.1 sets the base level at 34 for offenses involving at least 3,000 kilograms but less than 10,000 kilograms of marijuana (30,000 to 99,999 plants). U.S.S.G. § 2D1.1(c)(5).

erroneous" standard. *See Beaulieu,* 893 F.2d at 1181–82. We will reverse only if "the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *Id.* at 1182 (citing *Bill's Coal Company v. Board of Public Utilities,* 887 F.2d 242, 244 (10th Cir.1989)). The government did not physically seize and then quantify the majority of the marijuana involved in this case because the defendants already had harvested when the arrests were made, but quantification by physical seizure, although desirable, is not required. Otherwise, the seriousness of the crime often would not be reflected in the sentencing process. Instead, estimates are acceptable if they are based on information that has a " 'minimum indicia of reliability.' " *United States v. Davis,* 912 F.2d 1210, 1214 (10th Cir.1990) (quoting *United States v. Jones,* 640 F.2d 284, 286 (10th Cir.1981)). *See also United States v. Reid,* 911 F.2d 1456, 1460 (10th Cir.1990) ("Given several plausible estimates as to replicated quantities, the quantity determined … must rest upon a preponderance of the evidence."), *cert. denied,* —— U.S. ——, 111 S.Ct. 990, 112 L.Ed.2d 1074 (1991).

 The KBI estimated the quantity involved in this case by extrapolating from the density of the remaining plants (or remnants of plants) to a total per field. Also, the KBI used aerial surveillance photographs and counts from physical seizures. Defendant contends that the methods used were inconsistent and unreliable. For example, in one field the KBI estimated quantity by counting the number of marijuana plants in a single row of corn and multiplying by the total number of rows in the field.[3] In another field, a KBI agent sampled the density of marijuana plants in a small area and extrapolated to the total area. In yet another field, the KBI used only an aerial surveillance photograph because all of the plants had been removed after harvesting. Certainly, it would have been better for the government

to use consistent methods for estimating quantity, but defendant has pointed to nothing which would indicate that the methods used were inherently unreliable. Given the large amount of land involved, and the harvesting methods used by defendant,[4] it was difficult for the government to estimate quantity, but the different methods used appear reasonably related to the varying conditions among locations. After reviewing the testimony, we are not "left with the definite and firm conviction that a mistake has been made." *Beaulieu,* 893 F.2d at 1181–82. On the contrary, we find that the district court could deem the quantity computations sufficiently reliable so as to make a preponderance finding.

 Defendant, in his final argument, contends that the application of the Guidelines to his case violates the *ex post facto* clause because ten months of the conspiracy alleged in the indictment had elapsed before the Guidelines were implemented on November 1, 1987. *See* 28 U.S.C. § 994(a). Because the marijuana operation continued after the Guidelines were implemented, we find no *ex post facto* violation. *See United States v. Williams,* 897 F.2d 1034, 1039–40 (10th Cir.1990) (Guidelines applied without *ex post facto* violation to conspiracy extending from 1984 to December 1987), *cert. denied,* —— U.S. ——, 111 S.Ct. 2064, 114 L.Ed.2d 469. (1991)

### IV. Conclusion

We find no error other than the district court's failure to comply with Sentencing Guideline § 5G1.3. On remand, the district court is ordered to vacate the sentence and resentence in accordance with § 5G1.3. The defendant's new sentence must run consecutively to the prior federal sentences for marijuana distribution unless the court determines pursuant to Guideline procedures that departure is appropriate.

---

**3.** Defendant camouflaged the marijuana plants by interspersing them among corn stalks.

**4.** After the harvest, each plant would be removed in its entirety and discarded.