**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 26, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DURELL JONES, aka Durrell Jones,

    Defendant-Appellant.

No. 08-3142
(D.Ct. No. 2:07-CR-20064-KHV-1)
(D. Kan.)

_____

**ORDER AND JUDGMENT**[*]

Before **BARRETT**, **ANDERSON**, and **BRORBY**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Durell Jones pled guilty to possession with intent to distribute more than five grams of cocaine base (crack cocaine) in violation of 21 U.S.C.

---

[*] This order and judgment is not binding precedent except under the doctrines of law of the case, *res judicata* and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 841(a)(1) and (b)(1)(B)(iii).  The district court sentenced Mr. Jones to 125 months imprisonment and four years supervised release.  Although Mr. Jones appeals his sentence, his attorney has filed an *Anders* brief and a motion to withdraw as counsel.  *See Anders v. California*, 386 U.S. 738, 744 (1967).  Mr. Jones has filed a pleading in response, submitting newly-discovered evidence not presented to the district court which, he asserts, establishes he is not responsible for an additional sixty-three grams of crack cocaine attributed to him in determining his base offense level.  For the reasons set forth hereafter, we deny as moot counsel's motion to withdraw, reverse Mr. Jones's sentence, and remand to the district court for the limited purpose of resentencing Mr. Jones on the issue of the drug quantity attributable to him under United States Sentencing Guidelines ("Guidelines" or "U.S.S.G.") § 2D1.1 in light of the newly-discovered evidence presented.[1]

## I.  Background

On December 15, 2006, Kansas City, Kansas police officers viewed Mr. Jones fleeing when they arrived at his residence for the purpose of arresting him

---

[1] *See United States v. Chisum*, 502 F.3d 1237, 1245 (10th Cir. 2007) (denying as moot counsel's motion to withdraw and reversing defendant's sentence and remanding for further proceedings regarding issue of enhancement), *cert. denied*, 128 S. Ct. 1290 (2008); *United States v. Mihaly*, 67 F.3d 894, 897 (10th Cir. 1995) (denying counsel's motion to withdraw based on meritorious argument presented on appeal and reversing and remanding for resentencing).

on an outstanding warrant. Officers subsequently apprehended him in the back yard of another home, where they also found a bag containing 5.4 grams of crack cocaine.

Following his arrest and indictment, Mr. Jones appeared before the district court and entered a plea of guilty, without benefit of a written plea agreement, to possession with intent to distribute more than five grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii). Following Mr. Jones's guilty plea, a probation officer prepared a presentence report calculating his sentence under the applicable 2008 Guidelines. The probation officer calculated the base offense level at 30, under U.S.S.G. § 2D1.1(c)(5), based on a total of 68.4 grams of crack cocaine, which included the 5.4 grams of crack cocaine recovered at the time of Mr. Jones's arrest, as well as an additional sixty-three grams of crack cocaine he allegedly admitted to purchasing, as discussed hereafter. *See* U.S.S.G. § 2D1.1(c)(5) (Drug Quantity Tbl.). After decreasing the offense level by three levels for acceptance of responsibility, under U.S.S.G. § 3E1.1(a) and (b), the probation officer calculated a total offense level of 27, which, together with a criminal history category of IV, resulted in a recommended Guidelines range of 100 to 125 months imprisonment. *See* U.S.S.G., Ch. 5, Pt. A (Sent'g Tbl.). The probation officer also noted the minimum term of imprisonment was five years and the maximum term was forty years.

Mr. Jones objected to the quantity calculation of 68.4 grams of crack cocaine in determining his base offense level, stating he did not admit to purchasing sixty-three grams of crack cocaine but only answered questions as to whether he knew anyone from whom he could buy that amount of crack cocaine and at what price. As a result, Mr. Jones asserted, he should only be responsible for the 5.4 grams in his possession at the time of his arrest, for a base offense level of 24.

At the sentencing hearing, the government presented the testimony of Kansas City Police Detective Greg Lawson, who interviewed Mr. Jones following his arrest. He testified Mr. Jones admitted throwing down the bag containing five grams of crack cocaine and also admitted previously purchasing at least sixty-three grams of crack cocaine from his supplier, Dukey, for $1,000. Detective Lawson also testified that, based on his law enforcement experience, $1,000 for sixty-three grams of crack cocaine was "a little bit cheaper than the norm" and "indicative of someone who has a relationship with a supplier and maybe even dealing frequently with that supplier in order to get it for that low of a price." R., Vol. 2 at 9.

Mr. Jones also testified at the sentencing hearing and admitted possessing the five grams of crack cocaine found in his possession. However, he denied ever

purchasing the sixty-three grams of crack cocaine attributed to him or telling Detective Lawson he bought that amount. Rather, Mr. Jones testified, he was merely responding to questions by Detective Lawson on how much crack cocaine he could get from Dukey. In support of his contention, Mr. Jones insisted his interview with Detective Lawson was recorded and would establish he never specifically said he purchased sixty-three grams of crack cocaine but that he could purchase sixty-three grams of soft or powder cocaine. He testified that Detective Lawson then asked him if he could purchase sixty-three grams of hard or crack cocaine and he stated he could purchase that amount. Regarding his truthfulness with respect to certain statements, Mr. Jones also admitted he lied when he told Detective Lawson he purchased the crack cocaine from Dukey, because he actually purchased the five grams from someone named Mark. He also admitted he lied to a grand jury in another pending proceeding concerning a quadruple homicide.

At the conclusion of Mr. Jones's testimony, the district court asked whether a tape recording of the police interview existed and was advised by government counsel that Detective Lawson checked with the property unit and no tape recording had been found and he did not remember the interview being taped. After hearing argument from both parties on the drug quantity which should be attributed to Mr. Jones in calculating his base offense level, the district court

overruled Mr. Jones's objection to the presentence report, finding Mr. Jones was "not a very credible witness given his track record in terms of testimony under oath" and that the calculation of 68.4 grams of crack cocaine was "amply supported by the record, evidence, and inferences which can reasonably be drawn from that." *Id.* at 43. While the district court explained it was possible Mr. Jones had a different recollection of the interview than the officer did, it stated that in its judgment the officer's testimony was more likely an accurate representation of what occurred. In applying the Guidelines and the 18 U.S.C. § 3553(a) sentencing factors, the district court imposed a sentence at the high end of the Guidelines range at 125 months imprisonment. The district court explicitly stated it was imposing a sentence at the high end of the Guidelines range based on: (1) Mr. Jones's extensive juvenile history, which included being charged as an adult; (2) his violations during supervision; (3) his history as a gang member; (4) his very serious substance abuse; and (5) the need for the sentence to reflect the high risk of Mr. Jones committing future crimes and to protect the public.

Approximately three weeks after Mr. Jones's sentencing, the government discovered the transcript of his interview with Detective Lawson and provided a copy to his counsel. The transcript of Mr. Jones's interview with Detective Lawson states, in relevant part:

Q: Now can you ... assist us with any ... kind of enlightenment here

on where you got this [five grams of] crack cocaine?

A.  Uh, I might could [sic] help you get fifty grams.

Q.  OK, who that [sic] be from?

A.  Dukey.

    ....

Q.  OK, how much does uh, you said fifty grams, how much does fifty grams of cocaine cost?

A.  $1300.

Q.  OK is that soft cocaine or hard cocaine?

A.  Soft but you can make it hard, but you can get it hard from Dukey.

Q.  All right.  But when you got it from him on prior cases, is it hard or soft?

A.  Uh hard.

Q.  All right.  So you don't cook it, you get it from him hard?

A.  Yeah, when I get it from him.

Q.  ...  And if you got cocaine soft, how much, how many grams would you get for $1300?

    ....

A.  Sixty-three, yes.

Q.  ...  [S]o you would get sixty-three grams of powder cocaine, is that correct?

A.  Right.

Q. All right. And if you wanted … it pre-cooked up, already cooked up in a crack cocaine, how many grams would you get for $1,300?

A. Um, you could get sixty-three [grams] for [$]9[00] or maybe … like [$]1000 ….

        ….

Q. OK, if you want hard cocaine which is crack cocaine.

A. Yeah.

Q. You're gonna pay?

A. For sixty-three grams?

Q. Yeah.

A. You're going to pay [$]1000 maybe a little more.

Q. OK.

A. Anywhere from [$]9[00] to like [$]1175.

Interview Tr. at A6-A9.


## II. Discussion

Thereafter, Mr. Jones filed a timely *pro se* notice of appeal, after which his appointed counsel filed an *Anders* appeal brief explaining that after an examination of the record he could find no support in fact or law to support the appeal. *See Anders*, 386 U.S. at 744. In the *Anders* brief, counsel did not discuss the interview transcript but pointed out the district court made certain credibility determinations, finding Mr. Jones's testimony was not credible and Detective

Lawson's testimony supported using a drug quantity of 68.4 grams to calculate the sentence. As to the reasonableness of Mr. Jones's 125-month sentence, counsel noted that the sentence is within the Guidelines range of 100 to 125 months imprisonment, and the district court reviewed the 18 U.S.C. § 3553(a) sentencing factors in determining a sentence at the high end of that range was appropriate.

Pursuant to *Anders,* this court gave Mr. Jones an opportunity to respond to his counsel's *Anders* brief. *Id.* In response, Mr. Jones filed a letter contesting the district court's calculation of 68.4 grams of crack cocaine in assessing his base offense level and claiming his sentence was procedurally unreasonable based on that calculation. In support, he attached a copy of the transcript of his interview with Detective Lawson provided to him after sentencing and suggested it rebutted Detective Lawson's testimony that he admitted to purchasing sixty-three grams of crack cocaine. The government has filed its response, arguing the transcript supports Detective Lawson's testimony at the sentencing hearing, and therefore, the district court did not erroneously calculate Mr. Jones's relevant conduct and, instead, imposed a sentence within the appropriate Guidelines range. None of the parties have submitted legal argument on whether we should consider on appeal the interview transcript which was not considered by the district court.

As required by *Anders*, we have conducted a full examination of the record before us. *See id.* In this case, it is clear the newly-discovered evidence relied on in this appeal was not available to either the defendant or the district court at sentencing. Thus, it is evident the district court did not have the benefit of a review of the transcript of Mr. Jones's interview with Detective Lawson when determining whether to attribute an additional drug quantity of sixty-three grams of crack cocaine to Mr. Jones in calculating his base offense level under U.S.S.G. § 2D1.1. In our view, the sentencing court is the appropriate venue to conduct the fact-finding necessary to evaluate the newly-discovered evidence offered by the parties and is more capable of determining whether, in light of this evidence, it would impose a different sentence. As a result, we conclude a remand for consideration of the newly-discovered evidence by the district court is necessary. In remanding to the district court for consideration of the issue raised, we express no opinion on whether the evidence at issue is sufficient to change the drug quantity attributable to Mr. Jones, leaving that determination to the district court. Furthermore, absent a determination on remand, we cannot conclude whether Mr. Jones's sentence is otherwise reasonable on appeal. Finally, we disagree with Mr. Jones's appointed counsel that no non-frivolous grounds exist on appeal, given our determination remand is necessary for the district court to consider the newly-discovered evidence presented by Mr. Jones and the government on appeal.

III.  Conclusion

For these reasons, we deny as moot counsel's motion to withdraw, **REVERSE** Mr. Jones's sentence, and **REMAND** to the district court for the limited purpose of resentencing Mr. Jones on the issue of the drug quantity attributable to him under U.S.S.G. § 2D1.1 in light of the newly-discovered evidence presented.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge